Shawn ASHFORD, Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. WD 73162.

Missouri Court of Appeals, Western District.

Dec. 20, 2011.

Leah B. Williamson, Jefferson City, MO, for appellant.

Michael R. Rinard, II, St. Joseph, MO, for respondent.

Before: ALOK AHUJA, P.J., and THOMAS H. NEWTON and JAMES E. WELSH, JJ.

ALOK AHUJA, Judge.

Shawn Ashford was an employee of Triumph Foods. He was terminated in May 2009, and applied for unemployment compensation benefits. The Labor and Industrial Relations Commission denied Ashford's claim, finding that he had been discharged for misconduct. Ashford appeals. Because we conclude that the Commission's finding of misconduct is unsupported by sufficient competent evidence in the record, we reverse and remand.

### Factual Background

Ashford worked as a forklift operator for Triumph Foods from September 16, 2008, until May 22, 2009. On approximately April 22, 2009, Ashford violated Triumph's substance abuse policy and was offered two choices: resign or participate in an alcohol rehabilitation program. He chose the latter, and signed a rehabilitation agreement with Triumph.

On May 22, 2009, Ashford was scheduled to work from 10:30 p.m. to 6:00 a.m. Soon after reporting to work, he argued with coworkers. Based on a suspicion that Ashford's behavior was caused by substance abuse, he was taken to the health services department, and given a breathalyzer test. The breathalyzer revealed that Ashford's blood-alcohol concentration was .06. As a result, Triumph discharged him.

Ashford filed a claimed for unemployment benefits. Triumph protested, arguing that Ashford was discharged for violating the company's substance abuse policy. A deputy within the Division of Employment Security determined that Ashford was entitled to benefits, because Triumph had failed to establish that he was discharged for misconduct connected with his work.

Triumph appealed to the Division's Appeals Tribunal. A referee held a telephone hearing on Ashford's claim on July 30, 2010, at which Ashford and an assistant human resource manager from Triumph testified. The Appeals Tribunal reversed the deputy's determination, and concluded that Ashford had been terminated for misconduct connected with work, and was therefore disqualified from receiving benefits under § 288.050.2, RSMo. The referee found that, when Ashford agreed to enter an alcohol rehabilitation program in April 2009, "[h]e promised to come to work without any alcohol in his system." The referee found that Ashford drank alcoholic beverages, off Triumph's premises, between a work shift ending at 6:00 a.m. on May 22, 2009, and the second commencing at 10:30 p.m. The referee noted Ashford's testimony that he had not consumed any alcoholic beverages in the eight hours preceding his 10:30 p.m. shift, and that he was "completely sober" at the beginning of that shift. (Ashford testified that he and some co-workers had consumed alcoholic beverages after his earlier shift ended at 6:00 a.m., but that he returned home thereafter and slept.) The referee made no credibility determination as to Ashford's testimony concerning his sobriety and the time of his alcohol consumption, however. Instead, the referee found that Ashford had violated his rehabilitation agreement with Triumph by having a detectable amount of alcohol in his system:

> The employer had a reasonable expectation under the rehab agreement that the claimant abide a promise to come to work without alcohol in his system. Sobriety was not the touchstone, the presence of alcohol was.

> These actions constitute statutorily defined misconduct connected with work. As the employer has met its burden the Appeals Tribunal concludes

discharge for misconduct connected with work.

Ashford applied for review by the Labor and Industrial Relations Commission. The Commission affirmed the Appeals Tribunal's decision, and adopted that decision as its own. Ashford appeals.

## Standard of Review

■ The appellate court's review of the Commission's decision in an unemployment compensation case is governed by section 288.210, RSMo 2000. Section 288.210 provides:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;

> (2) That the decision was procured by fraud;

> (3) That the facts found by the commission do not support the award; or

> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

An appellate court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, *i.e.*, whether the award is contrary to the overwhelming weight of the evidence. In reviewing the Commission's decision, an appellate court must view the evidence objectively, not in the light most favorable to the decision of the Commission.

However, on matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations.

*Harris v. Div. of Emp't Sec.*, 350 S.W.3d 35, 39 (Mo.App. W.D.2011) (citations and internal quotation marks omitted). When, as here, the Commission adopts the decision of the Appeals Tribunal, we consider the Tribunal's decision to be the Commission's for purposes of our review. *Walker v. Div. of Emp't Sec.*, 333 S.W.3d 517, 519 (Mo.App. W.D.2011).

## Analysis

■ To resolve this appeal we need only address Ashford's second Point Relied On. It argues that the Commission's finding that Ashford promised "to come to work without alcohol in his system" was unsupported by the evidence. We agree.

■ Under § 288.050.2, RSMo, a claimant is disqualified from receiving unemployment benefits "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work." "Misconduct" is defined in § 288.030.1(23), RSMo as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits. However, when the employer claims that the claimant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected with work. *Schilb v. Duke Mfg. Co.*, 338 S.W.3d 392, 395 (Mo.App. W.D. 2011); *Walker*, 333 S.W.3d at 520.

The Commission's conclusion that Ashford had committed misconduct was based on its determination that he had agreed, at the time of entering an alcohol rehabilitation program in April 2009, not to show up at work with any detectable level of alcohol in his system. Our review of the record reveals, however, that there was no evidence to support the Commission's finding that Ashford had agreed to a zero-tolerance alcohol policy. Triumph failed to submit a written copy of its rehabilitation agreement with Ashford. The only evidence of the terms of the agreement comes, therefore, from the testimony of Ashford and Triumph's representative at the telephone hearing. Neither of these witnesses testified that the rehabilitation agreement required Ashford to come to work without any detectable alcohol in his system. When Ashford was asked by the referee whether he had promised as part of the agreement not to consume alcohol at all, or instead simply not to consume alcohol at work, he answered: "Just not at work." Similarly, when asked whether there was anything in the agreement to go "cold turkey," Ashford responded in the negative.

The testimony of Triumph's representative similarly fails to support the Commission's finding that the rehabilitation agreement adopted a zero-tolerance standard. The referee asked Triumph's representative whether Ashford was obligated by the rehabilitation agreement to go "cold turkey"; she answered that "[i]t does not indicate that." When the referee sought clarification as to whether Ashford had agreed in connection with his rehabilitation that he could be terminated "if there's any alcohol in his system at all ... or only a certain level," she answered that "I believe

it's a certain level, but I cannot tell you what that is."

In light of this testimony, there is simply no basis in the record for the Commission's finding that Ashford entered an agreement in which he "promised to come to work without alcohol in his system." To the contrary, Ashford testified that the agreement merely required him to refrain from consuming alcoholic beverages at work, while Triumph's representative testified that the agreement prohibited him from being at work with a particular (although unspecified) blood-alcohol concentration.

Triumph's protest of Ashford's claim also contended that he was terminated for violating the generally-applicable substance abuse policy contained in its employee handbook. The substance abuse policy is also absent from the record. In her testimony at the telephone hearing, Triumph's representative testified that the policy prohibited workers from "coming to work under the influence," a phrase which would normally connote some level of mental and/or physical impairment.[1] The Commission did not rely upon Triumph's substance abuse policy in its ruling, and made no finding as to whether Ashford was impaired at work, based on its view that, under the rehabilitation agreement,

"[s]obriety was not the touchstone, the presence of alcohol was."[2]

We recognize that it is possible for employers to mandate a zero-tolerance policy for drugs and alcohol in the workplace, and terminate employees for misconduct when they violate such a policy. Section § 288.045.1 provides that, "[i]f a claimant is at work with a detectible amount of alcohol or a controlled substance as defined in section 195.010, RSMo, in the claimant's system, *in violation of the employer's alcohol and controlled substance workplace policy*, the claimant shall have committed misconduct connected with the claimant's work." (Emphasis added.) As we have explained above, however, the evidence fails to establish that Triumph in fact had an "alcohol and controlled substance workplace policy" in place under which Ashford was prohibited from being "at work with a detectible amount of alcohol or a controlled substance ... in [his] system." Section 288.045 is therefore inapplicable here. *See Gaylord v. Wal-Mart Assocs., Inc.*, 193 S.W.3d 807, 808–09 (Mo.App. W.D.2006) (§ 288.045 inapplicable where evidence failed to establish that employer had a policy meeting the requirements of section, and had provided employee with notice of policy as statute requires).

1. *See, e.g., State v. Cox*, 478 S.W.2d 339, 342 (Mo.1972) (holding that " 'under the influence of alcohol' is synonymous with ... 'while in an intoxicated condition,' " and refers to " 'the impaired condition of thought and action and the loss of the normal control of one's faculties', or a condition 'that in any manner impairs the ability of a person to operate an automobile' " (citations omitted)); *Crollard v. N. Life Ins. Co.*, 240 Mo.App. 355, 200 S.W.2d 375, 381 (1947) (no error in jury instruction that "while intoxicated or under the influence of intoxicants" meant a condition where one "must have taken enough intoxicants to have produced ... an undue and abnormal condition disturbing the normal action of his physical or mental faculties").  Our Supreme Court has observed that "ordinary persons understand what is meant by the term[ ] ... 'under the influence.' " *State v. Schroeder*, 330 S.W.3d 468, 475 (Mo. banc 2011).

2. The Department of Labor and Industrial Relations contends in its Brief that the Commission found that Ashford committed misconduct because he "was clearly in an 'impaired condition' at work," and that "[t]he Commission ... determined that Claimant was under the influence of alcohol at work." That is not what the Commission's decision says, however.

The evidence in the record would support a finding that Ashford was prohibited from arriving at work with a certain (although unspecified) level of alcohol in his body, and from arriving at work "under the influence." The evidence failed to establish, however, that simply arriving at work with *any* detectable blood-alcohol level violated Triumph's substance abuse policy, or Ashford's rehabilitation agreement with the company. Given that the Commission's finding of misconduct was not based on substantial evidence, we must reverse the denial of benefits. The Commission did not address Triumph's alternative contention that Ashford violated its generally-applicable substance abuse policy. The case must accordingly be remanded for a determination, on the existing record, as to whether Ashford violated Triumph's substance abuse policy, and thereby committed misconduct, by appearing at work "under the influence" of alcohol. *See Munson v. Div. of Emp't Sec.,* 323 S.W.3d 112, 115 (Mo.App. W.D.2010).

### Conclusion

The Order of the Labor and Industrial Relations Commission is reversed, and the case remanded.

All concur.